IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | | |
|---|---|---|
| JOHN T. DIBBLE,<br><br>   Plaintiff,<br><br>v.<br><br>PATRICK J. QUINN, Governor of Illinois, MITCH WEISZ Chairman of the Illinois Workers' Compensation Commission, MARIO BASURTO, KEVIN LAMBORN, YOLAINE DAUPHIN, NANCY LINDSAY, JAMES DEMUNNO, MOLLY MASON, DAN DONOHOO, THOMAS TYRRELL, and DAVID GORE, Commissioners of the Illinois Workers' Compensation Commission<br><br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Cause No:  3:13-cv-00632-DRH-DGW |

## PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO DEFENDANTS' MOTION TO DISMISS

COMES NOW Plaintiff John T. Dibble, by and through counsel, to offer the following memorandum of law in response to defendants' motion to dismiss his complaint.

### Introduction

Plaintiff John T. Dibble ("Dibble") filed this complaint against Governor Patrick Quinn and members of the Illinois Worker's Compensation Commission seeking money damages and declaratory or injunctive relief to reinstate his employment as an arbitrator of the Workers' Compensation Commission.  As discussed herein, Dibble was protected by the Illinois Workers Compensation Act (Act) [820 ILCS 305/14 as amended by P.A. 94-277] which prohibited

termination of his employment in the absence of due process and cause.  Dibble had a property interest in the term of his office.

Dibble's complaint states that he was appointed to the Illinois Workers' Compensation Commission in 1990; that he was a qualified arbitrator; that he was reappointed to six (6) year terms in 1996, 2002 and 2008; that his term was to continue through September of 2014; and that defendants terminated his employment in 2011 without due process and the opportunity to be heard.  Dibble's complaint further states that he did not commit any acts or omissions which constitute incompetence, negligence or cause for discipline; and that he was terminated by defendants without cause.

On June 28, 2011, Defendant Quinn signed H.B. 1698 into law (hereinafter P.A. 97-18), which terminated Dibble's employment July 1, 2011, without notice and the opportunity to be heard.  Under the new law, Dibble continued to work until defendants could appoint another arbitrator in his stead.  On October 14, 2011, Quinn issued a press release which publicized Dibble's termination and impugned his reputation.  Defendants therefore implicated Dibble's liberty interests <u>and</u> deprived him of his property interest without due process of law.

Dibble was not the only arbitrator who was wrongfully terminated by defendants. Arbitrators Kathleen A. Hagan, Joseph Prieto, Richard A. Peterson, Peter Akemann and Gilbert Galicia filed identical complaints against defendants in the United States District Court for the Central District of Illinois, *cause number 11-3213*.  Defendants filed a motion to dismiss in the <u>Hagan</u> case, which is virtually identical to defendants' motion to dismiss Dibble's complaint. However, the Honorable Sue E. Myerscough denied defendants' motion to dismiss in the Central District.  <u>Hagan v. Quinn</u>, 838 F. Supp. 2d 805 (C.D. Ill. 2012).

## Legal Standard

Under Rule 12(b)(6), dismissal is proper where a complaint fails to state a claim upon which relief can be granted.  Fed.R.Civ.P. 12(b)(6).  To state a claim upon which relief can be granted, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  That statement must be sufficient to provide the defendant with "fair notice" of the claim and its basis.  <u>Tamayo v. Blagojevich</u>, 526 F.3d 1074, 1081 (7th Cir. 2008); <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  This means that (1) "the complaint must describe the claim in sufficient detail to give the defendants' fair notice of what the...claim is and the grounds upon which it rests"; and (2) its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level."  <u>EEOC v. Concentra Health Services, Inc.</u>, 496 F.3d 773, 776 (7th Cir.2007).  "In ruling on Rule 12(b)(6) motions, the court must treat all well-pleaded allegations as true and draw all inferences in favor of the non-moving party."  <u>In re marchFIRST Inc.</u> 589 F.3d 901, 904 (7th Cir. 2009) [Citing <u>Tamayo</u>, 526 F.3d at 1081].

## Background

Dibble held a term appointment.  Section 415/8b.18 of the Personnel Code stated that during the term of the appointment "the appointee can only be removed for cause."

After July 2005, and before the enactment of Public Act 97-18, section 305/14 of the Act (820 ILCS 305/14) provided that Dibble and the other arbitrators were appointed to specific terms of office subject to reappointment:

> Each arbitrator appointed after the effective date of this amendatory Act of 1989 shall be appointed for a term of 6 years. Each arbitrator shall be appointed for a subsequent term unless the Chairman makes a recommendation to the Commission, no later than 60 days prior to the expiration of the term, not to reappoint the arbitrator. Notice of such a

3

recommendation shall also be given to the arbitrator no later than 60 days prior to the expiration of the term. Upon such recommendation by the Chairman, the arbitrator shall be appointed for a subsequent term unless 8 of 10 members of the Commission, including the Chairman, vote not to reappoint the arbitrator.

**All arbitrators shall be subject to the provisions of the Personnel Code**, and the performance of all arbitrators shall be reviewed by the Chairman on an annual basis. The Chairman shall allow input from the Commissioners in all such reviews. (emphasis added).

On June 28, 2011, Defendant Quinn signed into law House Bill 1698, effective immediately as Public Act 97-18, which removed the provision cited above (pertaining to six-year terms) and added the following provision as a procedure for setting up a one-time appointment:

Notwithstanding any other provision of this Section, the term of all arbitrators serving on the effective date of this amendatory Act of the 97th General Assembly, including any arbitrators on administrative leave, shall terminate at the close of business on July 1, 2011, but the incumbents shall continue to exercise all of their duties until they are reappointed or their successors are appointed.

On or after the effective date of this amendatory Act of the 97th General Assembly, arbitrators shall be appointed to 3-year terms by the full Commission, except that initial appointments made on and after the effective date of this amendatory Act of the 97th General Assembly shall be made as follows:

(1) All appointments shall be made by the Governor with the advice and consent of the Senate.

(2) 12 arbitrators shall be appointed to terms expiring July 1, 2012; 12 arbitrators shall be appointed to terms expiring July 1, 2013; and all additional arbitrators shall be appointed to terms expiring July 1, 2014.

Upon expiration of a term, the Chairman shall evaluate the performance of the arbitrator and may recommend that he or she be reappointed to a second or subsequent term by the full Commission.

Under the amended Act, the terms of all existing arbitrators were declared to have terminated on July 1, 2011. As stated in Dibble's complaint, he had already been appointed to a six (6) year term which was set to expire in 2014. Moreover, Dibble was protected by the

Illinois Personnel Code which prohibited termination in the absence of just cause.  The Act has always had -- and still has -- a procedure for disciplining or terminating any arbitrator who may have engaged in conduct which merits discipline or termination.  The Act, as amended, still provides that "[a]ll arbitrators shall be subject to the provisions of the Personnel Code," but now also states:  "The changes made to this Section by this amendatory Act of the 97th General Assembly shall prevail over any conflict with the Personnel Code."

The legislative history of the bill is publicly available at the web site of the Illinois General Assembly:

http://www.ilga.gov/legislation/billstatus.asp?DocNum=1698&GAID=11&GA=97&DocTypeID=HB&LegID=58868&SessionID=84&SpecSess=

The origin of the legislation was House Bill 1698 whose only original subject was the rights of putative fathers in the context of possible adoptions.  The original bill was introduced on February 16, 2011 and had the customary floor debate and committee hearings. The bill passed the House on March 10 and was introduced in the Senate a few days later.  However, it then progressed through the Judiciary Committee because it dealt with civil processes in Illinois courts. On May 26 the bill was amended in the Senate to delete all of its original provisions and insert instead a 142 page bill with the so-called Workers' Compensation Act reforms.  The amended bill went through no committee hearings, passed in the Senate two (2) days later and received House concurrence on May31, 2011.

On October 14, 2011, Defendant Quinn issued a press release, which Dibble attached to his complaint.  Quinn's press release, which identified Dibble by name, commented that "reforms [that] will tackle the problems of the Workers' Compensation Commission" and that "strict performance evaluations" would be implemented.  These comments portrayed Dibble in a false

light because the former act already required annual evaluations of Dibble's performance and did not find cause for discipline or termination. Moreover, Quinn's comments suggested that Dibble was one of the "problems" in the Workers' Compensation Commission, which implicated his reputation and liberty interests.

Dibble's complaint states that he was deprived of a property interest and liberty interests without due process. Dibble seeks relief in the form of monetary damages and reinstatement of his employment. The crux of his claim is that defendants had no reason to terminate his employment, failed to give him an opportunity to be heard, terminated him without cause and therefore violated his constitutional rights.

Defendants have motioned this Court to dismiss Dibble's complaint because: (1) Dibble failed to allege the personal involvement of the Commission defendants; (2) Governor Quinn is entitled to absolute immunity; (3) the legislature could constitutionally alter Dibble's term in office; (4) Dibble's liberty interest claim fails to state a cause of action; (5) the Eleventh Amendment bars official capacity claims; and (6) the defendants are otherwise protected by qualified immunity.

## <u>Argument</u>

**1.      Dibble's complaint states a plausible claim of personal involvement in his termination by the Commission members, defendants Weisz, Basurto, Lamborn, Dauphin, Lindsay, DeMunno, Mason, Donohoo, Tyrrell and Gore.**

The question of who is a proper party to represent the interests of a State when an action if filed seeking injunctive relief against public officials was answered recently. The standard applied since <u>Ex parte Young</u>, 209 U.S. 123, 157, 28 S.Ct. 441, 52 L.Ed. 714 (1908) has been a straightforward test of determining which public officials have some connection with the

enforcement of the act. Entm't Software Ass'n v. Blagojevich, 469 F.3d 641, 644-45 (7th Cir. 2006). Here, Dibble was an employee of the Workers' Compensation Commission (before and after passage of P.A. 97–18). Even under the reform legislation, the Commission is the employer. Defendant Quinn had only one opportunity to appoint arbitrators, which he did under the power of the Act. Thereafter, the Act provides that the Commission supervises, trains, evaluates and make decisions on re-appointments as well as the power to discipline. For any injunctive relief to be enforced, there will need to be the cooperation of the Commission in effectuating the judgment of the court.

Notably, this "some connection" test does not depend upon specific powers being delegated under the challenged litigation. Further, this same connection to enforcement avoids any argument that there is any Eleventh Amendment immunity. *Id.*

For purposes of the Motion to Dismiss, Dibble has alleged a plausible claim of personal involvement of the individual Commission members in Dibble's termination. Specifically, a reasonable inference can be drawn that Dibble's termination occurred at the Commissioners' direction or with their knowledge or consent. Moreover, the Commissioners would, at the very least, remain in the lawsuit as a necessary party in the event of reinstatement. See, e.g., McDonald v. Krajewski, 649 F.Supp. 370, 372 (N.D. Ind. 1986) (dismissing damages claim against the defendant but concluding that the defendant was a necessary party because the defendant was the only official that could reinstate the plaintiff if the court ordered reinstatement).

### 2.    Governor Quinn is not entitled to absolute immunity.

Dibble does not claim that Defendant Quinn has any liability for his legislative action in approving or vetoing legislative proposals alone. As is clear from the legislation quoted in the

complaint, however, Defendant Quinn has a definite connection to the deprivation in that the challenged Act empowers the Governor to take the final step that causes the deprivation of property.  Under the Act, Dibble's term of employment came to an official end on July 1, 2011 and while Dibble would continue to serve temporarily, that continued service lasted only until Defendant Quinn made appointments to fill all of the now vacant positions.  It is the Governor who is charged with, and, in fact did, accomplish the final steps of termination.  Even if Quinn had appointed Dibble under this new authority, that action would only affect the damages because the terms of employment under the prior version of the Workers Compensation Act were altered.

In Bogan v. Scott-Harris, 523 U.S. 44, 53-54 (1998), the United States Supreme Court held that city council members were entitled to absolute immunity from § 1983 liability for "actions taken in the sphere of legitimate legislative activity." In making this determination, the Court found that the council's action was legislative in substance because their action "reflected a discretionary, policymaking decision implicating the budgetary priorities of the city and the services the city provides to its constituents." Id. at 55-56. Additionally, the Court found that eliminating services (like the council did) was an appropriate use of authority "in a field where legislators traditionally have power to act." Id. at 56.

This absolute legislative immunity does not apply only to legislators. See Bogan, 523 U.S. at 55 ("officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions"). In fact, the Seventh Circuit has extended absolute immunity to "governors who are sued for their role in legislative activity." United States v. Blagojevich, 638 F.3d 519, 529 (7th Cir. 2011) (allegations that the governor "took bribes in exchange for influencing the state legislature to pass the Racing Acts and for signing the Acts into law"

referred to acts that were legislative in nature; therefore, the governor was entitled to absolute legislative immunity), reh'g en banc granted in part, opinion vacated in part by 649 F.3d 799 (7th Cir. 2011). In addition, absolute legislative immunity applies to claims for declaratory and injunctive relief, as well as claims for damages. Supreme Court of Virginia v. Consumers Union of the U.S., Inc., 446 U.S. 710, 732-33 (1980); Risser v. Thompson, 930 F.2d 549, 551 (7th Cir. 1991).

"Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." Bogan, 523 U.S. at 54. That is, whether an act is "legislative" requires an analysis of whether the act was legislative in form and in substance. Id. at 55 (act of signing an ordinance into law was legislative in form; also noting that ordinance was legislative in substance where it "bore all the hallmarks of traditional legislation").

Here, Dibble asserts that Governor Quinn's appointment of new arbitrators effectuated their termination and did not constitute legislative action. Therefore, for purposes of this Motion to Dismiss, Defendant Quinn's appointment of the new arbitrators, which effectuated Dibble's termination, was not legislative in either form or substance. See, e.g., Acevedo-Garcia v. Vera-Monroig, 204 F.3d 1, 9 (1st Cir. 2000) (finding no absolute immunity for the administrative decisions involved in implementing the layoff plan after enactment of the ordinance); Myers v. Delaware County, Ohio, 2008 WL 4862512, at *13 (S.D. Ohio 2008) (finding that the appointment of an individual as the acting sheriff pursuant to state statute was administrative, not legislative). Defendants may again raise this issue in a motion for summary judgment.

### 3.    Dibble's complaint states a plausible due process claim.

Defendants argue that the legislature could constitutionally alter Dibble's term in office, that because he "did not have a legitimate claim of entitlement to the continuation of the

statutory terms of employment existing when he was employed" and "because his claim of entitlement to the position ended on July 1, 2011," his due process claims must fail. Defendants further argue that the legislature's modification or extinguishment of the right gave Dibble all the process that is due. However, this legislation singled out a small group of arbitrators, including Dibble, which defendants used to fire them. Only after a second reading of the bill in the Senate was the bill amended to include the legislative proposal at issue here. Specifically, on May 26, 2011, the original bill was deleted and replaced with 142 pages of new material. Five days later, after no committee hearings were held and no opportunity for public input, the bill was approved by the Senate, returned to the House, and passed on May 31, 2011. Dibble and selected others were then terminated.

Dibble's complaint states that he had a protected property interest and was deprived of that property interest without due process of law, which meets the requirement for a due process claim. See Doherty v. City of Chicago, 75 F.3d 318, 322 (7th Cir. 1996) (court must ascertain whether the plaintiff had been deprived of a protected property interest and, if so, what process is constitutionally due); and Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538-39 (1985) (Ohio employees classified as civil service employees who could only be dismissed for misfeasance had a property right in continued employment); and Gorman v. Robinson, 977 F.2d 350, 356-57 (7th Cir. 1992) (finding protectable property interest where the housing authority employee could only be terminated for just cause).

Dibble has also alleged he was deprived of property interest without due process of law. Defendants correctly note that a legislature may change the duration of the term of appointments and that the legislative process generally provides all the process that is due. See Grobsmith v. Kempiners, 88 Ill. 2d 399, 404-05 (1982) (providing that there is "no constitutional impediment

to the power of the General Assembly to change the duration of the term of the appointments or the method of fixing the time when presently existing terms would terminate"); Fumarolo v. Chicago Bd. of Educ., 142 Ill. 2d 54, 107 (1991) ("the legislative process itself created all the procedural safeguards necessary to provide the plaintiffs with due process"); McMurtray v. Holladay, 11 F.3d 499, 503-04 (5th Cir. 1993) (on summary judgment, finding that although the legislation extinguished the plaintiffs' property interest, the legislative process provided all the process that was due); Sykes v. City of Gentry, Ark., 114 F.3d 829, 830-31 (8th Cir. 1997) (same); Rea v. Matteucci, 121 F.3d 483, 485 (9th Cir. 1997) (same).

Nonetheless, some courts have recognized exceptions to this general rule, such as where there is a procedural defect in the legislation or the legislative act is adjudicatory as opposed to legislative. See Story v. Green, 978 F.2d 60, 63 (2d Cir. 1992) (reiterating that the general rule that the legislature can alter or eliminate a right previously conferred applies "absent any indication of some defect in the legislative process"); Campana v. City of Greenfield, 164 F.Supp.2d 1078, 1095 n. 11 (E.D. Wis. 2001) (noting that the legislative process does not provide all of the process due under the Due Process Clause if the legislature's action was adjudicative in nature), aff'd, 38 Fed.Appx. 339 (7th Cir. 2002); Conway v. Searles, 954 F.Supp. 756, 767 (D. Vt. 1997) (noting "a due process claim is available when the legislature deprives property rights with legislation targeted at a particular individual or group of individuals, or that was adopted during the course of a legislative process that was somehow defective").

At this stage in the litigation, for the purpose of defendants' motion to dismiss, accepting Dibble's allegations as true, along with the reasonable inferences to be drawn with those allegations, the one-time extinguishment of Dibble's property rights, along with an irregular legislative process amount to a plausible claim that Dibble's due process rights were violated.

**4.      Dibble's complaint states a cause of action referable to the deprivation of his liberty interest.**

Dibble has properly alleged all of the facts necessary to state a claim that Defendant Quinn damaged his reputation and deprived him of his liberty interest, which entitles Dibble to monetary damages.  It is important to remember that for the purpose of defendants' motion to dismiss, the allegations of fact set forth in Dibble's complaint must be taken as true. This is not the time when the sufficiency of the evidence is judged.  Instead the question presented is whether Dibble's complaint alleges sufficient facts.  Dibble alleges that Defendant Quinn's press release damaged his reputation.  Not only did Dibble lose his current employment, he is alleged to have suffered damage to his reputation that will impair opportunities for future employment.

The Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1.  Because an individual has no liberty interest in his reputation, "simple defamation by the government does not deprive a person of liberty within the meaning of the Due Process Clause."  Mihailovic v. Soldato, 2004 WL 528010, *2 (N.D. Ill. 2004); see also Doyle v. Camelot Care Centers, Inc., 305 F.3d 603, 617 (7th Cir. 2002).  However, "a government employee's liberty interests are implicated when in terminating an employee, the government [(1)] makes any charge against the employee that might seriously damage his or her standing or association in the community or [(2)] impose[s] on him or her a stigma or other disability that forecloses his or her freedom to take advantage of other employment opportunities."  Dziewior v. City of Marengo, 715 F.Supp. 1416, 1423 (N.D. Ill. 1989); see also Munson v. Friske, 754 F.2d 683, 693 (7th Cir. 1985) (noting that a liberty interest is implicated when "the individual's good name, reputation, honor[,] or integrity are at stake by such charges as immorality, dishonesty, alcoholism, disloyalty, Communism[,] or

subversive acts").  In such cases, due process requires the individual be given an opportunity to refute the charges. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 573 (1972). To prevail on a liberty cause of action, a plaintiff must show the following: that (1) he was stigmatized by the defendant's conduct; (2) the stigmatizing information was publicly disclosed; and (3) he suffered a tangible loss of other employment opportunities as a result of the public disclosure. Covell v. Menkis, 595 F.3d 673, 677-78 (7th Cir. 2010).

Dibble has alleged all the facts necessary to state a claim for relief and the sufficiency of the evidence is not judged at this stage. Specifically, Dibble has alleged that the issuance of the press release by Governor Quinn was stigmatizing, the comments were made public, he lost employment and he suffered damages.  At this stage in the litigation, Dibble has alleged a plausible claim for relief.  Dibble's allegations, the press release attached to the complaint, and the reasonable inferences therefrom, taken in the light most favorable to Dibble, are sufficient to defeat defendants' motion to dismiss his liberty interest claim for failure to state a claim.

**5.      Dibble's claim for prospective relief is not barred by the Eleventh Amendment.**

As alternative to damages, Dibble's complaint seeks declaratory or injunctive relief reinstating has employment.  Defendants argue that the official capacity claims against them are barred by the Eleventh Amendment. A suit against a state official in his official capacity is a suit against the State. Power v. Summers, 226 F.3d 815, 818 (7th Cir. 2000). A suit against the State, or state official in his official capacity, is barred by the Eleventh Amendment unless: (1) Congress has abrogated the State's immunity from suit, (2) a State has waived its immunity and consented to suit, or (3) the suit is one for prospective injunctive relief pursuant to Ex Parte Young, 209 U.S. 123, 15-60 (1908). Sonnleitner v. York, 304 F.3d 704, 717 (7th Cir. 2002).

The only exception at issue here is whether the suit is one for prospective injunctive relief. To determine whether this exception applies, "a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" Verizon Maryland, Inc. v. Public Service Com'n of Maryland, 535 U.S. 635, 645 (2002) (quoting Idaho v. Coeur d'Alene Tribe of Idaho 521 U.S. 261, 296 (1997) (O'Connor, J., joined by Scalia and Thomas, JJ., concurring in part and concurring in the judgment)).

Defendants argue that the alleged violation of due process is not an ongoing violation. In support thereof, Defendants cite Sonnleitner, 304 F.3d at 718, which held that the "underlying procedural due process claim" could not be "reasonably construed as 'ongoing.'" The Seventh Circuit noted that, even assuming the plaintiff's constitutional rights were violated, the violation was not the demotion but the fact that the demotion occurred without an adequate opportunity to be heard. Id. The Seventh Circuit found this was a past violation, not an ongoing one. Id; see also Garcia v. Illinois State Police, 2006 WL 2191341, *3 (C.D. Ill. 2006) (denial of pretermination hearing cannot give rise to a procedural due process claim under Ex parte Young).

However, several courts have distinguished Sonnleitner. In Kinney v. Anglin, 2011 WL 1899345, *7 (C.D. Ill. 2011), report and recommendation adopted by 2011 WL 1899560 (C.D. Ill. 2001), the court noted that in Sonnleitner, the plaintiff was ultimately "given the opportunity to refute claims against him" and a "personnel commission determined his demotion was improper." The Kinney court also noted that "the Seventh Circuit has continued to indicate that when an individual's termination or dismissal directly violates a federal constitutional guarantee, he may maintain a suit for reinstatement." Kinney, 2011 WL 1899345, at *7; see also Doe v.

14

Board of Trustees of the University of Illinois, 429 F.Supp.2d 930, 941 (N.D. Ill. 2006) (noting the holding in Sonnleitner but also noting that the "Seventh Circuit has continued to indicate that when an individual's termination or dismissal directly violates a federal constitutional or statutory guarantee, he may maintain a suit for reinstatement"); Power v.Summers, 226 F.3d 815, 820 (7th Cir. 2000) (holding that "an injunction that orders a state employee who has been demoted because of his exercise of a federally protected right to be restored to his previous position is not barred by the Eleventh Amendment even though it imposes a salary obligation on the state").

Based upon the reasoning of Kinney and Doe, Dibble's claims for injunctive relief are prospective and not barred by the Eleventh Amendment.

**6.    Defendants are not entitled to qualified immunity from damage claims.**

Qualified immunity shields "[g]overnment actors performing discretionary functions" from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Sallenger v. Oakes, 473 F.3d 731, 739 (7th Cir. 2007). To overcome qualified immunity, a plaintiff must demonstrate: (1) a violation of a constitutional right (2) that is clearly established at the time of the alleged violation, so that a reasonable public official would have known that his conduct was unlawful. Green v. Butler, 420 F.3d 689, 700 (7th Cir. 2005); see also Saucier v. Katz, 533 U.S. 194, 200-02 (2001). To meet this burden, plaintiff "may point to closely analogous cases demonstrating that the conduct is unlawful or demonstrate that the violation is so obvious that a reasonable state actor would know that what he is doing violates the Constitution." Green, 420 F.3d at 700 (internal quotations and citation omitted).

Dibble seeks injunctive relief against all of the Defendants. The Seventh Circuit has recognized that "[t]he doctrine of qualified immunity does not apply to claims for equitable relief." Denius v. Dunlap, 209 F.3d 944, 959 (7th Cir. 2000) (citing cases). Therefore, the doctrine of qualified immunity does not bar Plaintiff's claims against defendants. The appellate courts have clearly held that qualified immunity is not an issue in a case seeking an injunction rather than monetary damages.  The Seventh Circuit explained it this way:

> An action for prospective injunctive relief against a state official is brought properly in the official's *official* capacity. As the court noted in Scott v. Lacy, 811 F.2d 1153 (7th Cir.1987):
>
>> As a practical matter, a public official who is a defendant in a suit seeking an injunction is not "on trial" at all.  The suit seeks relief against him in his official capacity; he need not attend the trial, which will be conducted by attorneys representing the governmental body.  If he leaves office during the interim, he leaves the case behind and his successor becomes the party.  Id. at 1153-54.  Therefore, we need not deal extensively with the district court's conclusion that the doctrine of qualified immunity can shield a defendant from suit seeking injunctive relief in his individual capacity.  We only note that the Supreme Court has only applied the immunity doctrine in suits for damages.  See Harlow 457 U.S. at 806, 102 S.Ct. at 2732 ("[O]ur decisions consistently have held that government officials are entitled to some form of immunity from suits for damages.").  At least three courts of appeals have explicitly noted that qualified immunity is inapplicable to actions seeking equitable relief.  See, e.g. De Abadia v. Izquierdo Mora, 792 F.2d 1187, 1188 n. 1 (1st Cir. 1986) ("Qualified immunity is, of course, no defense to equitable relief."); Tubbesing v. Arnold, 742 F.2d 401, 403-404 (8th Cir. 1984) ("[T]he Board members' qualified immunity defense would entitle them to summary judgment only on the damages' claims.  The Board would still be required to defend itself in any trial involving Tubbesing's claim for equitable relief."); Bever v. Gilbertson, 724 F.2d 1083, 1086 (4th Cir.) ("[T]he appellants have no immunity from being put on trial on the equitable claims."), *cert* denied, 469 U.S. 948, 105 S.Ct. 349, 83 L.Ed.2d 285 (1984).

Akins v. Board of Governors of State Colleges and Universities 840 F.2d 1371, 1377 – 1378 (7th Cir. 1988) (Reversed as to other plaintiffs only on other procedural grounds: Board of Governors of State Colleges and Universities v. Akins, 488 U.S. 920, 109 S.Ct. 299, 102 L.Ed.2d 319 (1988).

There can be no dispute that Dibble had a property interest in his employment. Moreover, as stated in his complaint, Dibble did not engage in any conduct that would constitute cause for removal, which is the standard that applies under the Personnel Code.  As discussed throughout this memorandum, the law that forbids property interests in employment to be taken without prior notice and an opportunity to be heard has been established in the law for decades. This is not a case that deals with a legislative change to a statutory right:  it is a case of abusing the legislative process to fire a small number of selected arbitrators, including Dibble, and to give the Governor a single opportunity to replace them with people of his own choosing. There was no change in the property interests in the Personnel Code.  Likewise, the rights of arbitrators under both the prior version of the Act and under P.A. 97–18 are the same.  The only thing accomplished by the challenged provision of the legislation was the termination of employment. The law has been firmly established since <u>Loudermill</u>, *supra*. that termination of such employment violates the Due Process guarantees of the Fourteenth Amendment.

<u>Conclusion</u>

When the court or the public review the legislation and the facts that are not only alleged but are likely to be uncontested at trial, there is only one common sense conclusion about what happened.  Dibble was singled out for termination and not part of any change in the Personnel Code protections of employees. Since the "reform legislation" did not, in fact, alter the protections of arbitrators under the Personnel Code, the only thing that P.A. 97–18 did was to selectively fire Dibble and other selected arbitrators, to allow the Governor to appoint arbitrators of his choosing.

The inference from these facts, and indeed, the only rational conclusion, is that P.A. 97 – 18 was used as a means to fire unwanted arbitrators when their civil service protections

precluded discharge except upon proof that they were guilty of misconduct. They had done nothing wrong and the independence that their office required was bypassed with a political action to take away their jobs and replace them with the Governor's chosen appointees.

Nothing in the legislative process satisfied any sense of "notice and an opportunity to be heard," as has always been the cornerstone of the due process guarantees of the Fourteenth Amendment. This part of the law was not "reform" of the Personnel Code. It was instead an isolated act to take away those rights and to give them instead to other appointees. Dibble has more than adequately pled a claim that P.A. 97–18 is unconstitutional and that the actions of the defendants deprived him of his property rights in his employment without due process. For this, Dibble is entitled to the declaratory and injunctive relief, as well as compensatory damages for this civil rights violation.  The Motion to Dismiss must be denied.

Respectfully submitted,

**MCCHESNEY & ORTWERTH, L.L.C.**

**/s/ Brian S. McChesney**
**Brian S. McChesney #6212226**
***bmcchesney@gatewayinjurylaw.com***
**Craig M. Ortwerth #6257607**
***cortwerth@gatewayinjurylaw.com***
**1922 Chouteau Avenue**
**St. Louis, Missouri 63103**
**(314) 584-4500**
**(314) 584-4501 facsimile**
***Attorneys for Plaintiff***

## <u>CERTIFICATE OF SERVICE</u>

A copy of the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following, this 3rd day of October, 2013 to:

Terence J. Corrigan
**_tcorrigan@atg.state.il.us_**
Lisa Madigan, Attorney General, IL
500 South Second Street
Springfield, IL  62706
***Attorney for Defendants***

**/s/ Brian S. McChesney**