IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOHN T. DIBBLE,

Plaintiff,

v.

PATRICK J. QUINN, Governor of Illinois,
MITCH WEISZ, Chairman of the Illinois
Worker's Compensation Commission,
MARIO BASURTO, KEVIN LAMBORN,
YOLAINE DAUPHIN, NANCY LINDSAY,
JAMES DEMUNNO, MOLLY MASON, DAN
DONOHOO, THOMAS TYRELL, and DAVID
GORE, Commissioners of the Illinois
Workers' Compensation Commission,

Defendants.                                Cause No. 13-cv-632-DRH-DGW

MEMORANDUM & ORDER

HERNDON, Chief Judge:

I.   Introduction

This matter is before the Court on defendants Patrick J. Quinn et al.'s motion to dismiss pursuant to Rule 12(b)(6) of the FEDERAL RULES OF CIVIL PROCEDURE (Doc. 19). For the reasons stated below, defendants' motion is **GRANTED**.

According to the complaint, plaintiff John T. Dibble (Dibble) was appointed to the position of arbitrator for the Illinois Worker's Compensation Commission (Commission) in September 1990 and re-appointed to six-year terms in 1996, 2002, and 2008 to a term that was to continue through September 2014.

The Illinois Worker's Compensation Act (Act), 820 ILCS 305/1 *et seq.*, establishes the power to appoint arbitrators. Dibble's claims arise from H.B. 1698 which was signed into law on June 28, 2011, Public Act 97-0018 (P.A. 97-18), amending 820 ILCS 305/14.

Prior to P.A. 97-18, 820 ILCS 305/14 provided:

> Each arbitrator appointed after the effective date of this amendatory Act of 1989 shall be appointed for a term of 6 years. Each arbitrator shall be appointed for a subsequent term unless the Chairman makes a recommendation to the Commission, no later than 60 days prior to the expiration of the term, not to reappoint the arbitrator. Notice of such a recommendation shall also be given to the arbitrator no later than 60 days prior to the expiration of the term. Upon such recommendation by the Chairman, the arbitrator shall be appointed for a subsequent term unless 8 of 10 members of the Commission, including the Chairman, vote not to reappoint the arbitrator.
>
> All arbitrators shall be subject to the provisions of the Personnel Code, and the performance of all arbitrators shall be reviewed by the Chairman on an annual basis. The Chairman shall allow input from the Commissioners in all such reviews.

In pertinent part, P.A. 97-18 amended 820 ILCS 305/14 to provide that:

> Notwithstanding any other provision of this Section, the term of all arbitrators serving on the effective date of this amendatory Act of the 97th General Assembly, including any arbitrators on administrative leave, shall terminate at the close of business on July 1, 2011, but the incumbents shall continue to exercise all of their duties until they are reappointed or their successors are appointed.
>
> . . .
>
> Each arbitrator appointed on or after the effective date of this amendatory Act of the 97th General Assembly and who has not previously served as an arbitrator for the Commission shall be required to be authorized to practice law in this State by the Supreme Court, and to maintain this authorization throughout his or her term of employment.

P.A. 97-18, a copy of which is attached to Dibble's complaint, explicitly stated that these changes "shall prevail over any conflict with the Personnel Code."

After defendant Patrick J. Quinn (Governor Quinn) signed P.A. 97-18 into law, Governor Quinn issued a press release which Dibble attaches to his complaint (Doc. 2-2). The press release attached to Dibble's complaint states in part,

> Measures were also put in place to reform the Illinois Workers' Compensation Commission. Current arbitrators' terms will end on July 1, and strict performance evaluations will weighed[sic] in consideration for re-appointment. Arbitrators will serve three-year terms, must act in an unbiased, impartial manner, and must follow the same ethical rules that apply to judges. New arbitrators must be licensed attorneys. Additionally, all workers' compensation claims by commission appointees or employees will be heard by an independent arbitrator, and not arbitrators within the commission.

It also states, "[t]he reforms will tackle the problems of the [Commission]" (Doc. 2-2).

Dibble alleges violation of his Fourteenth Amendment due process rights (Doc. 2). Specifically, Dibble alleges deprivation of a property interest in his continued employment as a Commission arbitrator without due process of law. He also alleges that the press release deprived him of a liberty interest without due process. Dibble requests compensatory damages and declaratory and/or injunctive relief. Dibble brings suit against Governor Quinn in his "official capacity for matters concerning injunctive and declaratory relief and [] in his individual

capacity for matters concerning the compensatory damages in this case." As for defendants Mario Basurto, Kevin Lamborn, Yolaine Dauphin, Nancy Lindsay, James DeMunno, Molly Mason, Dan Donohoo, Thomas Tyrrell, and David Gore, Dibble alleges they, "were at all relevant times Commissioners of the [] Commission." Finally, as to defendant Mitch Weisz, Dibble alleges he was, "at all relevant times the appointed Chairman of the [] Commission." Similarly to Governor Quinn, Dibble brings suit against these defendants in both their official and individual capacities.

## II. Legal Standard

A Rule 12(b)(6) motion challenges the sufficiency of the complaint to state a claim upon which relief can be granted. *Hallinan v. Fraternal Order of Police Chicago Lodge 7*, 570 F.3d 811, 820 (7th Cir. 2009). The Supreme Court explained in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), that Rule 12(b)(6) dismissal is warranted if the complaint fails to set forth "enough facts to state a claim to relief that is plausible on its face."

In making this assessment, the district court accepts as true all well-pled factual allegations and draws all reasonable inferences in the plaintiff's favor. *See Rujawitz v. Martin*, 561 F.3d 685, 688 (7th Cir. 2009); *St. John's United Church of Christ v. City of Chicago,* 502 F.3d 616, 625 (7th Cir. 2007).

Even though *Twombly* (and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009)) retooled federal pleading standards, notice pleading remains all that is required in a complaint. "A plaintiff still must provide only enough detail to give the

defendant fair notice of what the claim is and the grounds upon which it rests and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Tamayo v. Blagojevich,* 526 F.3d 1074, 1083 (7th Cir. 2008) (citations and quotations omitted).

### III. Analysis

**A. Property Interest Claim**

Plaintiff Dibble alleges deprivation of a protected property interest without due process of law. Specifically, Dibble asserts that he had a protected property interest in his continued employment as an arbitrator for the Commission (Doc. 2 at 3-4). In reliance on the Act and Personnel Code, with specific citation to 20 ILCS 415/8b.18, Dibble alleges that he could only be removed for cause. Thus, the enactment of P.A. 97-18 deprived him of a property interest without due process of law.

It is true that continued government employment is a cognizable property interest in appropriate circumstances. *See, e.g., Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538-39 (1985) (civil service employees who could only be dismissed for "malfeasance" had a protected property interest in continued employment); *Gorman v. Robinson*, 977 F.2d 350, 356-57 (7th Cir. 1992) (same where housing authority employee could only be dismissed for cause). Dibble alleges that before Public Act 97-18 was signed into law, arbitrators were appointed for six-year terms subject to the provisions of the Personnel Code. (Doc. 2 at 3). Defendants state that Dibble properly alleges a property interest in

his employment before the enactment of P.A. 97-18. The Court is in agreement.

However, defendants are correct that any property interest Dibble may have had was extinguished when P.A. 97-18 was signed into law. "Property interests are not created by the Constitution, but rather 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" *Cole v. Milwaukee Area Technical Coll. Dist.*, 634 F.3d 901, 904 (7th Cir. 2011) (quoting *Roth v. Bd. of Regents*, 408 U.S. 564, 577 (1972)). Dibble's property interest was a creature of Illinois state law, and existed only so long as the applicable law remained unchanged. In Illinois, "[i]t is well established that civil service status is not a vested right, that having been created by the General Assembly, it is wholly within its control and subject to change by legislative action." *Grobsmith v. Kempiners*, 88 Ill. 2d 399, 404 (1982). Thus, there is "no constitutional impediment to the power of the General Assembly to change the duration of appointments or the method of fixing the time when presently existing terms would terminate." *Id.* at 405. The Illinois General Assembly exercised its power to change the duration of Dibble's appointment by passing P.A. 97-18. Per the unambiguous terms of that Act, Dibble's term as an arbitrator ended on July 1, 2011.

Dibble claims that he was not afforded due process—namely, notice and the opportunity for a hearing—before being deprived of his property interest in continued employment. But when a legislatively created property interest is altered or eliminated through a *legislative* act, the "legislative determination

provides all the process that is due." *Atkins v. Parker*, 472 U.S. 115, 130 (1985); *see also Fumarolo v. Chicago Bd. of Educ.*, 142 Ill. 2d 54, 107 (1990) ("the legislative process itself created all the procedural safeguards necessary to provide the plaintiffs with due process").

Dibble response concedes the "general rule" that the legislative process provides all the process that is due (Doc. 24 at 10-11). Yet he argues, apparently on two separate grounds, that this case presents an exception to the general rule. While not fully developed, Dibble first seemingly contends that the legislative process considered here did not satisfy the requirements of due process because the legislative process itself was "irregular" (Doc. 24 at 11). Second, he argues that the legislature's action was actually an adjudicative decision, and thus not a legislative determination at all (Doc. 24 at 11).

Addressing the latter of these two arguments first, there is no merit to Dibble's suggestion that P.A. 97-18 was an adjudicative decision and no reasonable inference provides otherwise. An act is legislative in nature if it applies both generally and prospectively. *L C & S, Inc. v. Warren Cnty. Area Plan Comm'n*, 244 F.3d 601, 604 (7th Cir. 2001). Legislative actions are those that apply on a "class-wide" basis. *Marusic Liquors, Inc. v. Daley*, 55 F.3d 258, 263 (7th Cir. 1995). P.A. 97-18 applies to "*all* arbitrators serving on the effective date of [the]…Act." (Doc. 24 at 4, emphasis added). Nevertheless, is appears Dibble insists that P.A. 97-18 was adjudicative because "[the] legislation singled out a small group of arbitrators…to fire them" (Doc. 24 at 10). If Dibble means "singled

out" in the literal sense (i.e., that the law applies to some arbitrators employed by the workers' compensation commission but not to others) then he is simply mistaken. As noted above, the law applies on a class-wide basis to "all arbitrators." Alternatively, Dibble may mean that the *actual purpose* of this legislation was to make it possible to fire particular arbitrators. But even if this were true, it would not make P.A. 97-18 an adjudicative decision. The motives of the legislature are not determinative of whether an act is legislative or adjudicative. *L C & S, Inc.*, 244 F.3d at 604. Even a law "targeting" a single individual is not adjudicative if it is prospective and generally applicable. *Id.* (holding town ordinance was legislative action even though it was "plain" that plaintiffs were the "only target" of the ordinance). In sum, P.A. 97-18 is a legislative act and not an adjudicative decision.

Dibble also argues that the legislative process did not provide all the process that is due in this case because the legislative process was itself "irregular" (Doc. 24 at 11). It is true that some courts have suggested, in dicta, that a *defect* in the legislative process creates an exception to the rule that the legislative process itself provides all the process that is due. *See, e.g., Atkins v. Parker*, 472 U.S. 115, 130 (1985) (noting absence of any claim of "defect in the legislative process"); *Story v. Green*, 978 F.2d 60, 63 (2nd Cir. 1992) (stating that the rule that legislature can alter or eliminate a legislatively created property right applies "absent any indication of some defect in the legislative process"); *Conway v. Searles*, 954 F. Supp. 756, 767 (D. Vt. 1997) ("a due process claim is available

when the legislature deprives property rights with legislation…that was adopted during the course of a legislative process that was somehow defective").

Even assuming that such an exception exists, the Court cannot agree with Dibble's contention that it would apply in this case. Dibble claims that the legislative process was "irregular," and in support of this claim he recites the following:

> Only after a second reading of the bill in the Senate was the bill amended to include the legislative proposal at issue here. Specifically, on May 26, 2001, the original bill was deleted and replaced with 142 pages of new material. Five days later, after no committee hearings were held and no opportunity for public input, the bill was approved by the Senate, returned to the House, and passed on May 31, 2011.

(Doc. 24 at 10). Dibble's complaint merely alleges, "[o]n June 28, 2011, defendant Patrick J. Quinn signed into law H.B.1698 effective immediately on that date on as Public Act 97 – 0018" (Doc. 2 at 4). Dibble nowhere argues, and his complaint does not allege, that the legislative procedure was *illegal*. Regardless, Dibble could likely not make such an argument—the bill was approved by both chambers of the Illinois legislature and signed into law by the governor (Doc. 24 at 2). Dibble apparently argues the process was "irregular" only in the sense that this legislative procedure was, allegedly, *unusual*. The Court cannot embrace so broad a definition of "defect" in the legislative process. The Court finds no authority for the proposition that legislative defect means anything short of *illegality* in the legislative process, and Dibble has cited none. If the mere suggestion that a legislative process deviated from routine procedure (absent any

allegation of illegality) was sufficient to invoke the legislative defect exception, then the exception would entirely swallow the rule. Because P.A. 97-18 was a legislative act approved by both chambers of the Illinois legislature and signed by the governor in accordance with law, the legislative process provided all the process that was due. Thus, Dibble's claim that he was deprived of a property interest without due process shall be dismissed.

**B. Liberty Interest Claim**

Dibble also claims deprivation of a liberty interest without due process (Doc. 2 at 5, Doc. 24 at 12). This claim is based on a press release published by Governor Quinn after signing P.A. 97-18 into law (Doc. 2 at 5). Dibble's complaint states the press release which forms the basis of his liberty interest claim is attached as "Exhibit B" (Doc. 2-2). Thus, it is to this press release which the Court refers.[1]

Dibble cites the press release's reference to "problems" with the Commission that P.A. 97-18 "tackle[d]." Dibble alleges that the "press clearly impugns the reputation[] of [Dibble] . . . and impairs his ability to continue in his profession and/or his search for new employment" (Doc. 2 at 4).

Dibble urges this Court to remember that "for the purpose of defendants' motion to dismiss, the allegations of fact set forth in Dibble's complaint must be taken as true" (Doc. 24 at 12). This is certainly correct. "All that [the Federal

---

[1] Dibble's response to the motion to dismiss refers to a press release of October 14, 2011 (Doc. 24, pp. 2 and 5). This press release is not properly before the Court. On this Rule 12(b)(6) motion, the Court can only rely on the allegations of the complaint and exhibits attached thereto. *See* Fed. R. Civ. P. 10(c), 12(b)(6) and (d).

Rules of Civil Procedure] require is a short and plain statement showing the plaintiff is entitled to relief." *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). A plaintiff is not required to plead any facts beyond this "short and plain statement" requirement. However, when (as here) "the plaintiff chooses to provide additional facts…the plaintiff cannot prevent the defense from suggesting that those same facts demonstrate the plaintiff was not entitled to relief." *Id.* Because Dibble included the press release as an exhibit attached to his complaint (Doc. 2-2), this Court may properly consider whether, as a matter of law, the statements included therein were sufficient to implicate a liberty interest. *Thompson*, 300 F.3d at 753.

Reviewing the statements in the press release attached to Dibble's complaint, as well as the allegations of the complaint, in the light most favorable to Dibble, the Court concludes that his claim for deprivation of a liberty interest must be dismissed. Dibble correctly identifies the elements of a due process claim predicated on a liberty interest (Doc. 24 at 13). "A plaintiff must show the following: that (1) he was stigmatized by the defendant's conduct; (2) the stigmatizing information was publicly disclosed; and (3) he suffered a tangible loss of employment opportunities as a result of the public disclosure." *Covell v. Menkis*, 595 F.3d 673, 677-78 (7th Cir. 2010). Dibble contends that Governor Quinn's statements concerning "reform" "impugn[] the reputation[] of [Dibble] and impairs his ability to continue in his profession and/or his search for new employment" (Doc. 2 at 4). Specifically, Dibble claims that the statement in the

press release promising "strict performance evaluations" for arbitrators under the new law "false[ly] implied…that [his] performance was inadequate." (Doc. 2 at 5). Dibble further attaches a web site notice which states, "the governor will appoint all arbitrator positions . . . All existing arbitrators must apply if they wish to be appointed" (Doc. 2-3). Dibble alleges this notice also creates a "clear implication . . . that plaintiff[] will be replaced" (Doc. 2 at 6).

The Court need not actually decide whether this imaginative interpretation of the press release and notice is reasonable, because "[n]ot even a direct claim of incompetence is enough to implicate a liberty interest." *Lashbrook v. Oerkfitz*, 65 F.3d 1339, 1349 (7th Cir. 1995). To be stigmatizing, a public statement accompanying termination must "impugn the employee's moral character or impl[y] dishonesty or other job-related moral turpitude." *Hedrich v. Bd. of Regents of Univ. of Wisconsin Sys.*, 274 F.3d 1174, 1184 (7th Cir. 2001). Thus, even if the press release referred to Dibble by name, this would still not sufficiently implicate a liberty interest unless it also called Dibble's "good name, reputation, honor or integrity . . . into question in a manner that makes it virtually impossible for [Dibble] to find new employment in his chosen field." *Townsend v. Vallas,* 256 F.3d 661, 670 (7th Cir. 2001); *Beischel v. Stone Bank School Dist.,* 362 F.3d 430, 439 (7th Cir. 2004) (statement in press release that, "Beischel has demonstrated a pattern of . . . providing misinformation to community and board members so many times now that there is a loss of trust and credibility, not only for the board but a segment of our community as well," did not rise to deprivation

of liberty interest). Dibble alleges that the press release implies incompetence, but he does not allege that his moral character has been impugned in a manner that would make it virtually impossible to find employment in his chosen field, and no reasonable interpretation of the press release or notice would support such an allegation. Therefore, Dibble's claim of deprivation of a liberty interest without due process must be dismissed.[2]

## IV. Conclusion

For the reasons stated above, defendants' motion to dismiss is **GRANTED** (Doc. 19). Dibble's complaint is dismissed with prejudice. Judgment shall enter accordingly.[3]

**IT IS SO ORDERED.**

Signed this 19th day of May, 2014.

Digitally signed by David R. Herndon
Date: 2014.05.19 12:30:03 -05'00'

**Chief Judge
United States District Judge**

---

[2] The Court notes it respectful disagreement with District Judge Myerscough's decision in *Hagan v. Quinn*, 838 F. Supp. 2d 805 (C.D. Ill. Jan. 19, 2012), denying a nearly identical motion to the one in issue here.

[3] The Court notes defendants also argue Dibble fails to allege personal involvement of defendants Weisz, Basurto, Lamborn, Dauphin, DeMunno, Mason, Donohho, Tyrrell, and Gore, that Governor Quinn is absolutely immune from the property interest claim, that the Eleventh Amendment bars the official capacity claims, and that to the extent defendants are not protected by absolute immunity, they are protected by qualified immunity. The Court does not address these arguments as its instant ruling is dispositive of this case.